(A. R. D. 1) [1]

E. DILLINGHAM, INC., a/c E. F. BOWE *v.* UNITED STATES

Entry No. 0–193.

First Division, Appellate Term

(Decided June 25, 1952)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the appellant.
*Charles J. Wagner*, Acting Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellee.

Before OLIVER, COLE, and MOLLISON, Judges; OLIVER, C. J., dissenting

COLE, Judge: We are required in this proceeding to review the decision of Cline, J., in *United States* v. *E. Dillingham, Inc., a/c E. F. Bowe*, 26 Cust. Ct. 700, Reap. Dec. 8004, holding foreign value, section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)), to be the proper basis for appraisement of 24 live chinchillas (11 pairs and 2 young), imported from Canada on July 28, 1948.

---

[1] Application for review decision.

The animals were invoiced, entered, and appraised at $25 each, or a total of $600. Testimony of the appraiser explains that before entry, he talked with the exporter who told him that the value of the merchandise was $600. After communicating with the Customs Information Exchange, the appraiser accepted the invoice value, which action he now believes to be erroneous, having been based on a wrong interpretation placed on a report from the Customs Information Exchange. His request for information concerning value from that agency brought the reply, "no record from this shipper," which he misunderstood to mean that the price available was no different from that given on the invoice. Instead, the Customs Information Exchange had no value on the merchandise and the appraiser "should have asked for investigation on it." Thus, the case was presented to the lower court as a collector's appeal for reappraisement.

In the court below, the Government, as plaintiff, argued, as expressed in counsel's brief, "that the correct purchase price and dutiable export value was $4580.00, apportioned as follows: 3 pair at $360 per pair, 1 pair (with 2 babies) at $700, and 7 pair at $400 per pair," and alternatively contended for "a foreign value of $10,700."

The trial court found the importation to consist of—

> one pair of chinchillas (2 years old) with 2 young
> seven pairs (7 or 8 months to 1 year old)
> three pairs (3 to 5 months old)

and in holding foreign value to be the proper basis for appraisement, accepted the prices set forth in a so-called "Purchase Order," embodied in the Treasury attaché's report, exhibit 1, as follows:

PRICE LIST

| Class A | 3 months old (No Guarantee) | $800.00 |
| Class B | 9 months old (Guaranteed) | 1,200.00 |
| Class C | Proven Breeders (Guaranteed) | 1,500.00 |

Applying the foregoing prices to the types of chinchillas, as found by the court below, the trial judge held statutory foreign value to be as follows:

| Three pairs (3–5 months old), Class A type, @ $800 per pair | $2,400 |
| Seven pairs (7 or 8 months to 1 year old), Class B type, @ $1,200 per pair | 8,400 |
| One pair (2 years old with 2 young), Class C type, @ $1,500 per pair | 1,500 |

Of considerable importance is a determination of the kinds or classes of animals that were actually included in the shipment under consideration. The Government contends that the importation consisted of good, healthy chinchillas, while the importer alleges that he bought and received "culls," a degenerate type of chinchillas, that is unfit for breeding and whose fur is valueless.

Analysis of the evidence is difficult not only because it is replete with vague, indefinite, and inconsistent statements, but also because credibility of witnesses is open to question. The Canadian exporter and the American importer were admittedly hostile to each other, and certain parts of the documentary proof are not satisfactory. We refer to two phases of the record as illustrative of its insufficiency.

In an affidavit, exhibit 8, executed by one Albert Schwemmer of Fort Atkinson, Wis., a dealer in chinchillas, the witness testifies to sales by the importer herein, identifying the chinchillas with distinguishing marks (tattooed numbers in the animals' ears) that agree with the exporter's list, exhibit 3, copy of which was given to the importer, showing the animals included in the exportation under consideration. Corroborative proof of these transactions may be found in the record book, exhibit E, purportedly showing all purchases, sales, and expenses of the importer's "entire chinchilla business," wherein, under the caption "Sold," are entries suggestive of the sales reported in the affidavit.

While this line of proof is not conclusive as to the type of animals covered by the entire shipment in question, it is evidence that some part of the importation consisted of healthy chinchillas. There is nothing in the record, however, from which determination can be made as to the particular category in which those animals belong. Hence, we are unable to find a value or values of the same.

On the other hand, an affidavit, exhibit H, executed by a veterinarian, stating that he was employed by the importer "to perform certain experiments *on a portion of a lot of twenty-four (24) chinchillas* [Italics added.]," might be accepted as identifying "a portion" of the shipment under consideration to be culls. But here again, the record is void of proof indicating the actual number of such animals imported.

While the contradictions and ambiguities are many, it is our opinion that additional proof can be adduced by the parties to effect a reconciliation, sufficient to give to the court positive testimony, or other evidence, from which a definite conclusion can be reached.

The judgment of the lower court is reversed and the case is remanded to a single judge for further proceedings, the assignment to be made to such docket as the chief judge, in his discretion, deems proper.